Good morning, your honors. May it please the court. I'm Deputy Attorney General Denise Yates, counsel for the appellant, Warden Curry, in this matter. I will reserve two minutes minimum for rebuttal. Let's start from the proposition that there's no change in the current law of the Ninth Circuit, that Hayward remains in effect. If it doesn't, then we're in a totally different circumstance. But if Hayward remains effective and we are, therefore, applying the sum-evidence rule? Your Honor, I disagree that if Hayward remains in effect that we still have to apply the sum-evidence rule. The Miller court said that there's – if there's any intervening authority by the Supreme Court that the Ninth Circuit and the other courts should consider that their prior decisions – Intervening after Hayward? Any intervening decisions by the Supreme Court, and in this case – After Hayward. Yes. The Wright decision came down, which again stated that you cannot transfer an issue that's been decided in one context to another context. Therefore, any decisions previous to the United States Supreme Court decision, such as Wright, should be considered to have been overruled. But if we decide to reject the position for rehearing, we'll be hearing in Bank after that case and reaffirm our decision in Hayward by so doing. Right. And it's my position that if the Supreme Court, again, decides another case that says that you cannot take the issue in one context and apply it to another, therefore, it's not clearly established Supreme Court law, that that case would render Hayward overruled. All right. Okay. So we shouldn't worry about the en banc process because Hayward's been overruled by Wright? Your Honor, I don't think that the Court should not worry about the en banc process. But, yes, it is my position – But if we go through it and don't take it in Bank, it doesn't make any difference because it's overruled anyway. It's your position. Yes, that the Supreme Court –  Well, now we got that clear. So we should advise the Court not to bother to take the case in Bank. No, Your Honor. All right. Proceeding with this Court's supposition that the sum evidence standard applies under Hill. We'll be willing to stipulate that the State of California Attorney General's office does not agree with Hayward. Thank you. You're not waiving those arguments in any of the three cases. Thank you, Your Honor. Proceeding with the Supreme Court's standard in Hill. Even under the Hill standard, the Court warned other courts that for the purpose of judicial review, it is not the Court's position to reconsider the evidence in the sense of do not reweigh the evidence, nor do you need to review the entire record. Rather, the only issue is whether there is any evidence in fact in the record. In this case, the controversy centers on how the Governor weighed the evidence. Therefore, still under Hill, the State court's decision was not contrary to or an unreasonable application of Supreme Court law. Could you ever think of a case, then, in which the sum evidence rule would have any meaning? Yes, Your Honor. Actually, although the California State court provides more due process protections than the Federal court, there is an example under California Supreme Court law, and that is Rosencrantz. In Rosencrantz, the California Supreme Court looked at the four, three or four bases  found that the Governor's finding about whether or not the inmate had lied about the offense for the following two weeks after the crime, that there was no evidence in the record to support that. And the California Supreme Court found that that was its role. There was no evidence to support that specific factor. But that was only one of the factors, wasn't it? Exactly. Didn't the Governor then rely on the egregiousness of the offense or the premeditation and those other factors as well? I'm sorry, Your Honor? Didn't the Governor rely on the egregiousness of the offense, the premeditation, the lying in wait, those factors also? Yes, Your Honor. But I was answering the Court's question of whether there would ever not be some evidence with regard to one factor. And the California Supreme Court No, not with regard to one factor. With regard to the Governor's decision. Well, the Governor, the judicial review is limited to the evidence in fact, not to the Governor's decision as to whether or not the inmate is an unreasonable danger to society. You mean if we find there's no evidence as to any one of the factors on which the Governor relied on? I'm sorry, Your Honor? Are you saying that if there's no evidence as to any one of the factors the Governor relied on, the decision should be reversed? No, Your Honor. In the Rosencrantz decision, the Court found that one of the factors the Governor relied on was not supported by the evidence, yet the others were. And therefore, they upheld the decision because it was clear from the record. I was asking if there was any case in which we could ever, a court, could ever reverse the Governor's finding on the basis of absence of some evidence. If there was no evidence supporting the Governor's actual factual determination, then yes, but that's what the judicial review is limited to. If there was no evidence in fact. Wouldn't there always be a finding that the crime was such, it was so serious, so egregious, so whatever? Wouldn't that always be a factor in the Governor's determination? Your Honor, no. It's not true. Yes, the Governor must discuss the crime, but it doesn't have to find that the crime is the reason to deny parole. There are instances when the Governor has found that the crime, yes, it was a heinous crime, but there were other decisions to keep the inmates in prison. Are there any decisions you're aware of in which the Governor ever denied parole without relying on the nature of the crime? Not off the top of my head, Your Honor, but I know that in other instances, I have reviewed four decisions where they have not relied on the crime to deny parole. But the Governor always does, I think. No, I don't conceive that, Your Honor. Okay. Would you just send me a letter if you find a case in which the Governor didn't rely on the nature of the crime? I won't hold my breath, but if you find one, I'd be interested in knowing. Yes, Your Honor. Again, under the clearly established Supreme Court law of Hill, the nature of how the Governor weighed the evidence renders is not an issue for judicial review. And under that standard, the State court's decision in this case was not contrary to or an unreasonable application of Supreme Court law, unless the Court has any questions. I'll reserve my time for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. I am Jennifer Peabody, and I represent the appellee Petitioner Benny Blankenship. The district court's decision on granting the petition for rid of habeas corpus and ordering Mr. Blankenship's immediate release should be affirmed because there is no evidence in the record to support the Governor's decision reversing the parole board's grant of parole release. In this case, the ADEPA is the governing standard because we do have a reasoned decision by the Superior Court of Los Angeles. The Superior Court of Los Angeles did reverse two of the Governor's findings and find that there was no evidence to support those two findings. That was what the Governor called his unstable social history and his lack of verified employment. So we do have an illustration of where somebody has found the Governor not? In this case, yes. Perhaps the whole decision is just factors. Yes. In this case, the Los Angeles Superior Court found two of the factors relied on by the Governor to be not true. The Superior Court did, however, find that there was some evidence to support the Governor's finding that the commitment offense alone justified his continued incarceration. However, there are no facts in this case to show that Mr. Blankenship's offense was particularly cruel, egregious, heinous, or that even if that was the case, that that offense committed 25 years ago showed that he poses a current unreasonable risk to society. And that is the standard. The Governor must find some evidence to support a finding that at this point the petitioner poses a current unreasonable risk to society. Petitioner submits that his offense was situational in nature, not particularly heinous, and was really just a run-of-the-mill second-degree murder. But even if this Court were to find it were particularly egregious, the offense alone in this case, given Mr. Blankenship's time in prison, what he's done, that alone doesn't support a finding of uncertainty. How do you know when it's reached that point? You know, one of our first cases in this area said, well, the crime's enough to warrant denial now, but at some point there'll be enough time and distance that we would find it a constitutional violation. How do you know when that point has been reached? Well, this Court has sort of suggested that there needs to at least be a minimum term, or at least in the cases this Court's decided up until now, you need to do the minimum term. And in this case, that minimum term is 15 to life. And but I don't think that that's necessarily the guiding point, but in this case Mr. Blankenship at the time of the parole hearing had done 20 years. Even if the board used the upper term matrix, which they did in this case, that was 19 years. So he'd still made the 20 years. At this point, well, or before this Court, he's been in 25 years. And I think the way the Court can tell is by looking at someone's record, the record before they went and committed the life offense and the record while in custody, to determine whether or not that person poses an unreasonable risk. If a person has a lot of disciplinary violations or can't follow the recommendations of the board or can't behave properly in prison, then maybe the commitment offense combined with those factors could always be a basis to deny parole. But when you have someone like Mr. Blankenship, who throughout his incarceration has done everything asked for him, he only has 115, which was 20 years ago. He's done AA and NA. AA he's done for 20 years. NA he's done for 17 years. He has only one minor, he has four minor rule violations, but that's more than a decade ago. He's upgraded vocationally, educationally, and he's done everything the board's asked of him. He has no record of violence in prison. He has no use of illegal substances, no threats on staff, threats to anyone else. So when you consider his crime and what he's done since then, and his ability to comply with the institutional regulations support a finding that at this point, regardless of how you term or you classify his crime, the crime alone doesn't support a finding of current dangerousness. You know, a quarter of a century after the commitment offense. And in this case, the crime was very situational in nature. The client was under the influence of alcohol and PCP. He's corrected those problems. He's constantly participated in NA and AA, and he's learned that he has a problem and that because of that problem, he does things which he normally wouldn't do. So in this case, there is no evidence to support the governor's finding that Mr. Blankenship poses an unreasonable risk to society, and there's no evidence supporting his reversal of the Pearl Grant, and therefore the state court's finding that there was some evidence is an unreasonable application of firmly established United States Supreme Court precedent. Thank you. Thank you. Your Honor, the governor was rightly concerned with Mr. Blankenship's return to the community. At the time that he committed this crime, he was living at home across the street from his neighbor. His parole plans at this time that he presented to the board and to the governor were to move back to that exact environment,  the exact location where the crime occurred. So he should have opted to go out of state? No, Your Honor. That's not what I'm going to do. To go to a strange place after he's been in prison for over 25 years? No, Your Honor. What I'm suggesting is that the governor was rightfully concerned. Here before he committed the crime, he had been using PCP twice a week for eight to nine years. Although he still had the support of his family and his parents where he was living, he had a job for two years, but he gave that up because it was too stressful for him to continue, obviously due to his drug habits. That was 25 years ago. Yes, but despite the fact that the governor's concern was justified, here he did all of these things in that same environment with the same support. Was he concerned that he was going back to the same address or that he was going back to his parents? Both. Both. Was he going to be better off not living with his parents? Your Honor, the point I'm trying to make is that the governor was rightfully concerned that going back to the exact same environment from which he came and committed the crime would not necessarily – Did anyone tell him that it was a parole board thought it was a bad idea, or the governor thought it was a bad idea to live with his parents at that address, but that he'd get parole if they moved to another city or another neighborhood? Not specifically, Your Honor. What I'm trying to explain is that the governor was rightfully concerned that going back to the same environment from which he came and the promises of support from a family, which I'm sure were promising to support him at the time he committed the crime, was not good enough to eliminate all of the years that he may have behaved in prison. That's amazing. That really is shocking to think that the governor would say, you're going back to your family and it's the exact same circumstance, and 25 years have elapsed, and that the implication is if he had said, okay, I'm going to go live in San Francisco in a group home, that would have been okay. The concern, Your Honor, with the governor was the fact that there was the lack of – I see my time is up, Your Honor. Well, that's all right. I'd like to hear you get to it. The concern was the fact that there was no – that Mr. Blankenship did not have any particular job that he was going to go to. Therefore, he would be going back to the exact same environment, uncertain of what he was going to do. And therefore, based on his history of having been a drug abuser and what have you, while he was in that same environment,  I think there are much easier solutions to this problem. If they want to say get a job, they can say that, you know, and then go out and don't get it in that neighborhood, get another job. That's what you need to get parole. He either would or wouldn't. But it seems to me he denied parole for a couple more years because he suddenly decided he shouldn't live with his family. Well, I'm not saying that's the only reason why the governor denied parole. There were many reasons why the governor denied parole, including obviously the heinousness of the commitment offense, the fact based on his unstable social history, his drug abuse, and the district attorney's opposition, as well as his unconfirmed employment plans when he paroled. One of the other things that have been changed is history couldn't have been changed. The commitment offense couldn't have been changed. It's now 25 years, and I assume those things are enough reason to keep him in prison for life. Your Honor, the statute is clear as to what the penalty will be when somebody commits a certain crime. It's 15 years to life for second-degree murder. Whether or not he stays in prison every time he comes up for parole suitability is the option that the state has given him. He's able each time to make a presentation as to why he's suitable for parole, and each time that executive decision-maker gets to use its discretion and decide whether he is suitable at that time. Every presentation is different. He can bring new information to the table, and each review will be done generally by someone different with new eyes as to what the suitability possibility is. Well, he, the board actually did, was persuaded, as I understand it. The board was persuaded. This is the governor who wasn't. Right, and the governor found that some of the bases that the board relied on in granting parole were unfounded, stating that the board found that Mr. Blankenship was under stress when he committed the crime, but the governor didn't find that being high on PCP was a valid stress. Rather, certainly that was a choice based on his drug abuse problem. Okay. Thank you. Thank you both very much. The case, just argued, will be submitted.
judges: Reinhardt, Noonan, Fisher